# EXHIBIT C

SUPREME COURT  QUEENS COUNTY          CRIMINAL TERM, TAP PART A
------------------------------------X
                                      By: GRIFFIN, J.
THE PEOPLE OF THE STATE OF NEW YORK,
                                      Dated: August 10, 2009
            against
                                      Indictment No.: 1427/08
EARL WRIGHT,

            Defendant.
------------------------------------X

By notice of motion and the supporting affidavit of Earl Wright, defendant, pro se, both dated March 25, 2009, defendant moves for an order suppressing "certain evidence consisting of DNA." This motion is grossly untimely; it was filed on May 11, 2009, seven months after the decision on the omnibus motion was rendered and eight (8) months after the defendant's arraignment. No excuse has been offered to justify this late motion. See CPL section 255.20.

The People submit the affirmation of Mina Malik, Esq., dated June 17, 2009, and the supplemental affirmation of Mina Malik, Esq., dated August 5, 2009, in opposition to the relief sought by the defendant. The People offered no objection to the untimeliness of the motion in their initial answer, but do object on this ground in their supplemental response. They explain that their initial response was directed toward the motion filed by the defendant's attorney, Scott Davis, Esq., and made no reference to the defendant's pro se motion because they had not been served with those papers.

Defendant submits a letter, dated July 1, 2009, with photocopied material attached, in further support of his motion for an order of suppression.

NYC22

## BACKGROUND AND PROCEDURAL HISTORY

Both parties agree that on August 27, 2007, a sample of the defendant's DNA was taken, and the profile developed from that sample was entered in the New York State identification database. It is apparently this DNA sample which defendant seeks to suppress.

The defendant is accused, in this case, of the crimes of Rape, first degree, Robbery, first degree, Burglary, first degree, and Sexual Abuse, first degree, allegedly occurring on June 29, 2008. The defendant's DNA profile, on file with the New York State identification databank, provided a match to the DNA profile developed from the DNA evidence obtained from the vaginal swab of the complainant, in this case.

On October 16, 2008, the defendant consented to the People's application to obtain a new DNA sample from the defendant, through a buccal swab, in order to confirm that this defendant's DNA profile matches the male DNA profile taken from the complainant's vaginal swab. On October 21, 2008, the defendant withdrew his consent for the new buccal swab. On February 10, 2009, a force order was submitted to this Court for the obtaining of a DNA sample from this defendant by buccal swab. By affirmation, dated April 24, 2009, defense counsel, Scott Davis, Esq., opposed the force order and moved to suppress the DNA sample he alleged was unlawfully taken from the defendant on August 27, 2007.

On May 11, 2009, the defendant filed the instant motion for an order suppressing the DNA sample on file with the New York State identification databank. On June 22, 2009, the defendant discharged his attorney, insisting, even after this Court warned the defendant of the difficulty and dangers of such a course, upon representing himself.

2

NYC23

## TIMELINESS

CPL section 255.20 provides, in pertinent part, as follows:

> Except as otherwise expressly provided by law, whether the defendant is represented by counsel or elects to proceed pro se, all pre-trial motions shall be served or filed within forty-five days after arraignment and before commencement of trial, or within such additional time as the court may fix upon application of the defendant made prior to entry of judgment...
>
> All pre-trial motions, with supporting affidavits, affirmations, exhibits and memoranda of law, whenever practicable, shall be included within the same set of motion papers, and shall be made returnable on the same date, unless the defendant shows that it would be prejudicial to the defense were a single judge to consider all the pre-trial motions...
>
> Notwithstanding the provisions of subdivisions one and two hereof, the court must entertain and decide on its merits, at anytime before the end of the trial, any appropriate pre-trial motion based upon grounds of which the defendant could not, with due diligence, have been previously aware, or which, for other good cause, could not reasonably have been raised within the period specified in subdivision one of this section or included within the single set of motion papers as required by subdivision two. Any other pre-trial motion made after the forty-five day period may be summarily denied, but the court, in the interest of justice, and for good cause shown, may, in its discretion, at any time before sentence, entertain and dispose of the motion on the merits.

As noted, supra, the defendant's motion is grossly untimely, coming more than eight (8) months after the defendant's arraignment, with no explanation for this delay from the defendant. The motion could be denied on that ground alone, but it fails on its merits, in any event.

## THE INSTANT MOTION

The defendant seeks an order suppressing the DNA sample taken from him on August 27, 2007. He contends that this sample was taken pursuant to Executive Law section 995, which law did not exist at the time of his sentence upon his conviction for the crime of Robbery, second degree, in 1990, and that, since he was re-sentenced in that case in 1993

3

NYC24

upon a reduction of his conviction by the Appellate Division, Second Department, to Robbery, third degree (People v. Wright, 189 AD2d 612), a crime which was not added to the list of crimes requiring a DNA sample until 2004, five years after the expiration of his sentence, there was no legal basis for the taking of his DNA sample on August 27, 2007. That sample, he contends, should be suppressed, along with its fruits.

Article 49-B of the Executive Law, which was enacted in 1994, established the State DNA database and required that persons convicted of certain felonies provide a DNA sample to be maintained in that database. Robbery, third degree was not one of those felonies listed in the statute, but Robbery, second degree, was. Section 995-c of the Executive Law, which became effective on January 1, 1996, required designated offenders who were convicted on or after its effective date to provide a blood sample for the development and recording of DNA profiles in the database. In 1999, Article 49-B was amended to include certain designated offenders who had committed their offenses prior to its effective date, December 1, 1999, but whose sentences had not been completed before that date. People v. Kellogg, 188 Misc2d 164. A further amendment, which added the crime of Robbery, third degree, to the list of designated felonies, took effect on July 6, 2004. It included those convicted of a listed felony who had not, as of July 6, 2004, completed their sentence, but the defendant alleges that he had completed his sentence on December 24, 1999.

The defendant contends that, in 1993, his conviction was reduced from Robbery, second degree, to Robbery, third degree, and he was re-sentenced to a term of imprisonment of three and one half to seven years. This means that the original statute, enacted in 1994, and its

4

NYC25

1999 amendment, did not apply to this defendant, since it included Robbery, second degree, as a designated felony, but not Robbery, third degree. Further, since the defendant was released on December 24, 1999, after having served his maximum sentence, the amendment of 2004, which added Robbery, third degree to the list of designated felonies, would not apply to him, either. It applied only to those convicted on or after July 6, 2004, or to those whose sentences had not been completed as of July 6, 2004.

The People have submitted a supplemental response to their answer, in which they concede that the defendant's conviction was reduced to Robbery, third degree, in 1993. They argue, however, that this reduction was not reflected in the report of the New York State Division of Criminal Justice Services [referred to by the People as the "rap sheet"] regarding the defendant's criminal history and that, when law enforcement authorities took the defendant's DNA sample in 2007, they did so in the good faith, but mistaken, belief that the defendant owed the sample to the database as a result of his conviction for Robbery, second degree, in 1990.

The proper remedy regarding the improper collection of the defendant's DNA sample for inclusion in the State database is expungement, pursuant to Executive Law section 995-c(9). The defendant has made no such application in the nearly two years that have elapsed since the DNA sample was taken in August of 2007.

Courts have held that the use of fingerprints and/or arrest photos that should have been sealed or returned to the individual should not be suppressed, since these statutes are not designed to immunize an individual from the investigatory use of these materials. People v.

5

NYC26

Patterson, 78 NY2d 711; People v. Williams, 271 AD2d 363; People v. Pate, 182 AD2d 717; People v. Lau, 171 AD2d 581; People v. Gilbert, 136 AD2d 562. Logic dictates a similar result in this case, where the material on file with law enforcement is a DNA profile generated from a sample of an individual's DNA.

Further, the defendant was convicted of Assault, third degree, on January 11, 2008, in Kings County. This is an offense for which he would have been required to submit a DNA sample. This defendant's DNA record would have been on file prior to the commencement of this criminal action, in any event. The inevitable discovery of the match between the defendant's DNA which would have been on file in connection with his conviction for the crime of Assault, third degree, and the DNA discovered in connection with the instant case renders the use of the DNA sample collected in 2007 valid. The Inevitable Discovery Doctrine is one of three general exceptions to the exclusionary rule regarding fruits of the poisonous tree.

The defendant's application for the suppression of the DNA sample collected on August 27, 2007, is denied.

The Court notes that the People had an independent source of probable cause with which to support their application for the collection of a new DNA sample from this defendant, which is apparently at the heart of this application. The defendant testified in the Grand Jury admitting to having sex with a woman on the date in question but claimed that it was consensual. He gave an accurate description of the complainant, testified that he frequented the area of the incident because his mother lived nearby, and that he had seen the

6

NYC27

complainant before and knew where she lived. He further testified that he had vaginal sex with the complainant, which he described as consensual, and that he ejaculated in her vagina. The defendant's testimony before the Grand Jury is attenuated from any illegality surrounding his arrest. See People v. Benzon, 114 AD2d 506. This testimony, standing alone, provides a sufficient basis of probable cause to support the People's application for the collection of a DNA sample from the defendant for the purpose of comparison with DNA samples found and secured during the investigation of the crimes charged in this indictment.

This constitutes the decision and order of this Court.

Enter order accordingly.

J.S.C.

NYC28