FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 2 5 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
EARL WRIGHT,

                Plaintiff,

       -against-

NEW YORK CITY, NEW YORK CITY
POLICE DEPARTMENT, POLICE
OFFICER DAVID H. MILLER, JOHN
DOE # 2, POLICE OFFICER N.Y.C.P.D.,

                Defendants.
----------------------------------------------------------X

**REPORT AND
RECOMMENDATION
09 CV 2452 (CBA)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff, Earl Wright, files this *pro se* action under 42 U.S.C. § 1983, alleging defendants violated his constitutional rights when they took a sample of his DNA. Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Honorable Carol Bagley Amon referred defendants' motion to me for a Report and Recommendation pursuant to 28 U.S.C. §636(b). For the following reasons, it is respectfully recommended that the motion should be granted as to plaintiff's Fourth Amendment claim. I also recommend that plaintiff be granted 30 days to oppose summary judgment independent of defendants' motion on plaintiff's remaining claims for the reasons set forth in this Report and Recommendation. See *infra* at 15.

## BACKGROUND

The following facts are undisputed and taken from defendants' Local Rule 56.1 Statement, unless otherwise noted. In 1994, the State of New York passed a law that requires individuals who commit certain designated offenses to provide DNA samples for inclusion in a state DNA database. 1994 N.Y. Laws, ch. 737, § 7; N.Y. Exec. Law § 995, *et seq* ("New York DNA Index statute"). Originally, the only designated offenses were assault and homicide, id.;

1

but over time, various amendments expanded the list of designated offenses. The amendments relevant to this case were enacted in 1999 and 2004, when robbery in the second degree, see 1999 N.Y. Laws, ch. 560, § 1, and robbery in the third degree, see 2004 N.Y. Laws, ch. 138, § 1, were added to the list of designated offenses. The DNA sample requirement only applies to those individuals who commit the newly-designated offense or are still serving time for the newly-designated offense at the time of the effective date of the amendment. See 2004 N.Y. Laws, ch. 138 § 3; 1999 N.Y. Laws, ch. 560 § 9.

In 1990, plaintiff was convicted of robbery in the second degree. In 1993, the Appellate Division, Second Department, reduced his conviction to robbery in the third degree. Plaintiff completed his sentence for this crime on December 24, 1999. Tr. of Pl.'s Dep., Meyerberg Decl., Ex. A ("Pl.'s Dep.") at 19:9; Court Order, Meyerberg Decl., Ex. C at 5. At the time plaintiff completed his sentence, robbery in the second degree was a designated offense but robbery in the third degree was not. 1999 N.Y. Laws, ch. 560 § 1.

On August 26, 2007, plaintiff was arrested for assault. Because plaintiff's Division of Criminal Justice Services criminal history record ("rap sheet") erroneously listed plaintiff's 1990 robbery conviction as robbery in the second degree, defendants took a sample of his DNA while he was in police custody. Although plaintiff "questioned the validity" of the officer's directive that he provide a DNA sample, plaintiff ultimately complied and swabbed the inside of his left and right cheeks.[1] Amended Compl. at p.3, II(D). Defendant Miller signed the paperwork related to the procurement of plaintiff's DNA sample. Pl.'s Dep. at 31:10-11. This sample was entered into the New York State DNA database.

The charges stemming from the August 2007 arrest were dismissed. However, plaintiff was arrested again in November 2007 and pled guilty to assault in the third degree. As assault in

---

[1] The officer who actually directed plaintiff to swab his mouth has not been identified by the parties. Pl.'s Dep. at 30:11. Plaintiff states that this officer told him he had a court order to take his DNA. Id. at 28:7-9; 31:11.

2

the third degree is a designated offense under N.Y. Exec. Law § 995(7), an officer obtained a second DNA sample from plaintiff in January 2008.

In February 2008, plaintiff's DNA profile matched a DNA profile developed from a 2005 rape kit. Pl.'s Dep. 41:18-21. Plaintiff testified at the grand jury that was convened to consider the rape charge that he had intercourse with the complainant, but the intercourse was consensual. Court Order, Meyerberg Decl., Ex. C., p. 6. Plaintiff moved to suppress the 2007 DNA sample taken while he was in police custody for the August 2007 assault charge, arguing that it was improperly seized because he had not committed a designated offense under the New York DNA Index statute. The court denied plaintiff's motion on the grounds that: (a) plaintiff should have made an application for expungement years earlier, (b) the prosecution was entitled to use erroneously sampled DNA, similar to its ability use fingerprints or arrest photos that should have been returned or sealed, and (c) the discovery of the DNA match was inevitable as plaintiff's DNA record from the 2008 sampling "would have been on file" prior to the commencement of the criminal action. Court Order, Meyerberg Decl., Ex. C., p. 5-7.[2] Plaintiff was tried by a jury and convicted of rape, robbery, and burglary.

Plaintiff sues defendants herein for monetary damages for unconstitutionally taking his DNA sample, which he alleges violated his rights under the Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments. The parties completed discovery and defendants move for summary judgment attaching the requisite Local Rule 56.2 notice. Plaintiff opposes the motion

---

[2] It is unclear from the record whether plaintiff's 2008 DNA sample was included in the New York State DNA database prior to the February 2008 match. Plaintiff testified that the prosecutor relied solely on the 2007 sample at trial. Pl.'s Dep. at 41:13-23; 42: 1-2. In denying plaintiff's motion to suppress the 2007 sample, the trial court reasoned that plaintiff had been convicted of assault in the third degree in January 2008, which is an offense for which "he would have been required to submit a DNA sample" and therefore his DNA record "would have been on file prior to the commencement of this criminal action in any event." Court Order, Meyerberg Decl., Ex. C., p. 6. As this fact has not been established by either party, for the purposes of this motion, the Court assumes that plaintiff's 2008 DNA sample was not in the database prior to February 2008.

and requests a stay and additional discovery under Rule 56(d) of the Federal Rules of Civil Procedure. Defendants have filed a reply.

STANDARD

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. The Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment). For the purposes of defendants' motion for summary judgment, the facts here are viewed in the light most favorable to plaintiff.

The non-moving party must provide "affirmative evidence," from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257; Fed. R. Civ. P. 56(c). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary

judgment." Id. (quoting Anderson, 477 U.S. at 252). Here, because plaintiff is proceeding *pro se*, the Court reads his papers "liberally and interpret them to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted)).

DISCUSSION

I. Fourth Amendment Violation

Defendants argue that plaintiff fails to allege a Fourth Amendment violation. Defendants' argument is without merit. It is undisputed that the New York DNA Index statute did not apply to plaintiff at the time his DNA was taken in August 2007. Accordingly, plaintiff alleges a Fourth Amendment violation by asserting that defendants took his DNA without statutory authority, a warrant, or reasonable suspicion. Therefore, the Court should not credit defendants' argument that plaintiff fails to allege a Fourth Amendment violation.

II. Qualified Immunity

Defendants next argue that they are entitled to qualified immunity. The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Court must consider, in either order: (a) "whether the facts that a plaintiff has alleged ... or shown ... make out a violation of a constitutional right" or (b) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 816.

In Fourth Amendment contexts, the former inquiry concerns "whether the *search* itself was unreasonable." Moore v. Andreno, 505 F.3d 203, 215 (2d Cir. 2007) (emphasis in original). Where officers have "reasonable but mistaken beliefs as to the facts ... courts will hold that they

5

have not violated the Constitution." Saucier v. Katz, 533 U.S. 194, 206 (2001), overruled on other grounds by Pearson, 129 S. Ct. 808. The latter inquiry asks "whether the officer's *belief* in the lawfulness of their conduct was unreasonable ... based on the state of the existing law." Moore, 505 F.3d at 215 (emphasis in original). While this analysis is "purely legal in that it depends on whether the law put the officer on notice that his conduct would be clearly unlawful," it also "adds a further dimension" of protection by acknowledging that "reasonable mistakes can be made as to the legal constraints on particular police conduct." Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756 (2d Cir. 2003) (quoting Saucier, 533 U.S. at 205) (internal quotations omitted). In this manner, qualified immunity "ensures that 'all but the plainly incompetent or those who knowingly violate the law' are protected from suit." Id. (quoting Malley v. Briggs, 475 U.S. 355, 341 (1986)).

Defendants argue that even if plaintiff's constitutional rights were violated, defendants are entitled to qualified immunity. Defendants argue that the law was not clearly established "that a DNA cheek swab violated plaintiff's constitutional rights when it was conducted pursuant to an arrest based on probable cause, and based on a review of the arrestee's" rap sheet, Defs.' Mem. of Law at 8, and that defendant Miller reasonably believed his conduct was lawful in light of the existing law and the information he possessed, id. at 12.

A. Clearly Established Constitutional Right

An officer is entitled to qualified immunity if "a reasonable officer could have believed the search to be lawful, in light of clearly established law and the information the searching officer[] possessed." Moore v. Vega, 371 F.3d 110, 116 (2d Cir. 2004). For purposes of qualified immunity "clearly established" means that:

> the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has

previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness would be apparent.

Wilson v. Layne, 526 U.S. 603, 615 (1999). "Indeed, the question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." Moore, 505 F.3d at 214.

Plaintiff's DNA sample was taken without suspicion or a warrant, but under the mistaken belief that plaintiff qualified under the New York DNA Index statute. The reasonableness of this mistake is discussed *infra* at 9. While the Fourth Amendment prohibits unreasonable searches and seizures, a warrantless, suspicionless search is not unreasonable where it is conducted pursuant to "a state's operation of a ... program [that] presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable cause requirements." Moore, 371 F.3d at 116. An "alleged 'special needs' search must conform to the relevant state rule and this rule must also pass constitutional muster." Id. at 115-6 (quoting Griffin v. Wisconsin, 485 U.S. 868, 873 (1987)).

The Second Circuit rejected a Fourth Amendment challenge to the New York DNA Index statute, holding that this statute serves the special need of "creat[ing] a DNA database to assist in solving crimes should the investigation of such crimes permit resort to DNA testing of evidence." Nicholas v. Goord, 430 F.3d 652, 668 (2d Cir. 2005). The Court reasoned that the government interest in "obtaining identifying information from convicted offenders and keeping a record of such information" outweighed the limited physical intrusion on convicted felons who have much of their identifying information, including fingerprints, on file with the State. Id. at 669-70. Therefore, even though these DNA searches and seizures are conducted without probable cause, a warrant, or suspicion, they do not run afoul of the Fourth Amendment. Id. at 671.

Accordingly, "there is no clearly established law stating that ... officers violate the Fourth Amendment rights of" convicted felons "to be free from unreasonable searches if the officers do not first obtain a warrant based on probable cause," Moore, 371 F.3d at 116, or have any suspicion as to any criminal activity before taking a DNA sample from an individual reasonably believed to be a designated offender. Thus, defendant Miller did not violate a clearly established right in taking plaintiff's DNA in an attempt to comply with the New York DNA Index statute. See Mitchell v. Kruger, No. 07-CV-1801, 2009 WL 160798, at * 8 (E.D.N.Y. Jan. 23, 2009) (Gleeson, J.) (no violation of clearly established right where officers procured a DNA sample from an arrestee who was a high-risk level registrant on the New York Sex Offender Registration Act Registry).[3]

Moreover, even if the Court were to liberally construe plaintiff's complaint to assert a claim that Miller should have corroborated plaintiff's criminal history reported on his rap sheet, there was no clearly established law requiring that the officer fact-check the arrestee's criminal rap sheet before taking a DNA sample, at the time of this incident. The Second Circuit has emphasized that "we do not require the same level of investigation and corroboration required to establish probable cause" to pursue a special needs search. Moore, 371 F.3d at 117. The precise quantum of investigation and corroboration required before conducting a special needs search has not been clearly established. See United States v. Chirino, 483 F.3d 141, 150 (2d Cir. 2007) (McLaughlin, J., concurring). Accordingly, Miller's exclusive reliance on the information in the plaintiff's rap sheet, did not violate a clearly established right. See Jackson v. Ricks, No. 02-CV-773, 2006 WL 2023570, at * 23 (N.D.N.Y. Jul. 18, 2006) (Lowe, M.J.) (defendants, who relied on a DOCS "Sentence & Commitment Form" to determine that a prisoner was required to submit

---

[3] Copies of the unreported decisions cited herein are attached and the Clerk of Court is directed to send these cases to plaintiff with this Report.

a DNA sample were entitled to qualified immunity because an alleged right to have a "certificate of conviction on file" at the correctional facility was not clearly established).

As it did not violate a clearly established law to require an arrestee whose rap sheet listed a qualifying offense under the New York DNA Index statute to provide a DNA sample, defendant Miller is entitled to qualified immunity.

B. Miller Reasonably Believed the New York DNA Index Statute Applied to Plaintiff

Defendant Miller also argues that he is entitled to qualified immunity because he reasonably believed his conduct was lawful. Where an officer believes he is conducting a search pursuant to a "special needs" state program, "[i]f such belief was reasonable, qualified immunity protects them from liability, even if that belief was mistaken." Moore, 371 F.3d at 117 (because the officer reasonably but mistakenly believed she was entering the house of an absconded parolee, she did not violate the non-parolee owner's right by entering without a warrant). In addition, even if the officer makes a mistake in the performance of an official duty, qualified immunity applies, as long as the officer's performance of the search did not violate a clearly established right and was not plainly incompetent. Id.

Although the parties have not submitted a copy of plaintiff's rap sheet as it appeared in 2007, it is undisputed that at the time of the 2007 DNA sampling, plaintiff's rap sheet listed robbery in the second degree – a designated offense triggering the applicability of the New York DNA Index statute – as part of plaintiff's criminal history. If this listed offense had been accurate, the New York DNA Index statute would have required plaintiff to submit a DNA sample, since plaintiff had not yet completed his sentence when robbery in the second degree was added as a designated offense. See Pl.'s Dep. at 19:9; Court Order, Meyerberg Decl., Ex. C. at p. 5 (plaintiff completed his sentence on December 24, 1999); 1999 N.Y. Laws, ch. 560

(adding robbery in the second degree to the list of designated offenses, effective as of December 1, 1999).

Miller's belief that plaintiff was required to provide a DNA sample was objectively reasonable. First, as defendants argue, the mistake Miller made was based on plaintiff's rap sheet. A rap sheet is a criminal history record linked to an individual's fingerprints and maintained in a "central data facility" by the Division of Criminal Justice Services ("DCJS"). N.Y. Exec. Law § 837(6) & (7). Cases in this circuit have repeatedly held that an officer's reliance on information from a historically reliable computerized database is objectively reasonable and the information therein is sufficient to establish probable cause for an arrest. See e.g., Caceres v. Port Authority, 631 F.3d 620, 623 (2d Cir. 2011) (a "reasonable officer could have concluded that the 'warrant hit' conferred probable cause where warrant recording system was historically reliable"); Mayer v. City of New Rochelle, No. 01-CV-4443, 2003 WL 21222515, at * 6 (S.D.N.Y. May 27, 2003) (Mukasey, J.) (officer's reliance on New York Statewide Police Information Network ("NYSPIN") report indicating a driver's registration was suspended was objectively reasonable, even though officer had personal knowledge of past incident of the same error).

Plaintiff provides no argument or evidence that defendant Miller had reason to believe his rap sheet was wrong or that the DCJS criminal history records database is not reliable. Cf Herring v. United States, 555 U.S. 135, 129 S.Ct. 695, 704-5 (2009) (absent any evidence of routine or widespread errors in county database, officers reliance on database was objectively reasonable despite police book-keeping error contained in database); Hughes v. McWilliams, No. 04-CV-7030, 2009 WL 4823940, at * 11 (S.D.N.Y. Dec. 15, 2009) (Smith, M.J.) (finding no triable issue of fact where defendant relied on NYSPIN record absent any evidence he knew of expungement or vacatur of plaintiff's criminal history or otherwise acted unreasonably in relying

on the NYSPIN record); Muhammad v. City of Peekskill, No. 06-CV-1899, 2008 WL 4525367, at * 6 (S.D.N.Y. Sept. 30, 2008) (Karas, J.) (finding officer's belief, based on allegedly erroneous information from a DMV database, was reasonable where plaintiff failed to show the DMV records were "inaccurate, [defendants] knew or suspected that they might be inaccurate, or that [defendants] were responsible for any inaccuracies in these records"). [4]

Moreover, given that the law did not require an officer to corroborate the criminal history listed on the rap sheet prior to undertaking a special needs search, Miller could have reasonably believed that relying exclusively on the rap sheet was lawful. As noted above, the Second Circuit has recognized that special needs searches do not "require the same level of investigation and corroboration required to establish probable cause," Moore, 371 F.3d at 117, and neither the Second Circuit nor the Supreme Court has defined the type of investigation and corroboration required for special needs searches. Absent "any cases of controlling authority at the time of incident" regarding what type of corroboration or evidence is required to determine whether an arrestee committed a qualifying offense, defendant's reliance on the rap sheet, even if mistaken, was reasonable. See Wilson, 526 U.S. at 616-7 (the lack of any controlling authority weighed in favor of finding defendants' mistaken belief that it was lawful to bring along media observers when executing a warrant to be reasonable); Moore, 371 F.3d at 117 (to the extent that exclusive reliance on information from a federal agent was a mistake, it was not plainly incompetent and therefore defendant was entitled to qualified immunity).

Accordingly, Miller's belief that plaintiff was subject to DNA sampling under the New York DNA Index statute was reasonable. To the extent that there was any mistake in relying

---

[4] NYSPIN, the "historically reliable" computer database at issue in Caceres, Mayer, and Hughes, is a communication system and information databank created within the division of the state of police. N.Y. Exec. Law § 217. Although the Court makes no findings regarding the "historic reliability" of the DCJS database for the purposes of probable cause to arrest, I find there is no basis in the record to conclude that Miller erred in relying on the information in the rap sheet for the purposes of procuring a DNA sample under the New York DNA Index statute, which requires less than probable cause.

exclusively on the rap sheet, such a mistake did not violate clearly established law and was not plainly incompetent. Therefore, the Court should grant defendant Miller's motion for summary judgment on the grounds of qualified immunity.

   III.   Damages

Defendants next argue that plaintiff's challenge to his conviction and imprisonment are barred by the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994) and the Second Circuit's decision in Townes v. City of New York, 176 F.3d 138 (2d Cir. 1999). Under Heck v. Humphrey, a Section 1983 litigant may not collaterally attack a criminal conviction "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." 512 U.S. at 489. Plaintiff's claim here is not barred by Heck; finding in his favor would not necessarily imply that his conviction was unlawful, because, as the trial court noted, there was an independent basis for plaintiff's conviction (his testimony that he had intercourse with the victim) and the discovery of the DNA match was inevitable (because the 2008 DNA sample would have eventually resulted in a match). Court Order, Meyerberg Decl., Ex. C at 6. However, Heck expressly limits plaintiff's damages to "actual and compensable injuries" that are separate and apart from his conviction and imprisonment. Id. at 487 n.7 (noting that a plaintiff must prove that the unlawful search caused him "actual, compensable injury" which does "*not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)") (emphasis and parentheses in original). Plaintiff admitted in his deposition and in his Local Rule 56.1 statement that he suffered no physical or emotional damages from the buccal swab. Pl.'s Dep. at 52:24-53:4-6; Pl.'s 56.1

statement ¶¶ 26, 27. As plaintiff's only claimed injuries are tethered to his conviction and imprisonment, his claims for damages are barred by Heck.[5]

The Second Circuit's holding in Townes also bars plaintiff's claims to the extent he seeks compensation for his conviction and incarceration. After recognizing that "the basic purpose of Section 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights," the Court held that there is a "gross disconnect" between a Fourth Amendment violation and the injury of "subsequent conviction and incarceration." Townes, 176 F.3d at 147-8. Given that "the evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all," a plaintiff's "only possible damage claim [is] limited to the brief invasion of privacy related to the seizure and initial search of his person." Id. at 148-9. Plaintiff presents no argument to withstand defendants' motion on this issue. Accordingly, defendants' motion for summary judgment should be granted on plaintiff's claim that defendants' violation of his Fourth Amendment rights resulted in his conviction and imprisonment.[6]

IV. Municipal Liability

In order to hold the City of New York liable under Section 1983, plaintiff must prove that "an official policy caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36

---

[5] The Second Circuit has noted that damages such as "damage to reputation, isolation from society, separation from friends and family, and loss of potential earnings" are barred by Heck unless plaintiff alleges malicious prosecution. Townes, 176 F.3d at 149. Plaintiff does not raise a malicious prosecution claim and could not establish the necessary element of "termination of the [criminal] proceeding in plaintiff's favor." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010).

[6] The Court need not address defendants' remaining argument that seeks to limit any damages award from a hypothetical invasion of privacy damages claim arising from the buccal swab itself. Plaintiff does not make such a claim and defendant Miller is entitled to qualified immunity for the incident, see infra at 6-11. In any event, the Court notes for purposes of completeness that defendants' argument is incorrect. Although plaintiff admits that he suffered no physical or emotional damages as a result of the swab, plaintiff is not limited *by this admission alone* to an award of nominal damages. The Second Circuit has "long recognized in § 1983 cases that punitive damages may be awarded even in the absence of a compensatory award." Robinson v. Cattarus County, 147 F.3d 153, 161 (2d Cir. 1998). Moreover, to the extent defendants base this argument on the claim that plaintiff's DNA 2008 sample was on file and plaintiff would have suffered the same consequences, this claim has not been established by the record. See *infra* at 3 n.2.

(2d Cir. 2008). A single incident is insufficient to impose liability against the City, see e.g., Raphael v. County of Nassau, 387 F. Supp. 2d 127, 131 (E.D.N.Y. 2005), and the theory of respondeat superior is unavailable in Section 1983 actions. Roe, 542 at 38 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986)).

Plaintiff asserts that his constitutional rights were violated pursuant to a 2005 New York Police Department Interim Order ("Interim Order"), which is attached as Exhibit D to Plaintiff's Opposition. This Interim Order sets forth the procedure for using rap sheets with a DCJS "banner" heading stating "Required to Provide a DNA Sample for Inclusion in The State DNA Database" to identify and locate defendants required to submit samples and then assign a uniformed officer to obtain a DNA sample. Pl.'s Opp.'n to Defs.' Mot. for Summ. Jt. ("Pl.'s Opp'n"), Ex. D.[7] This Interim Order does not affect the accuracy of criminal history sections on a rap sheet or DCJS's decision to mark a rap sheet with the "Required to Provide a DNA Sample" banner heading. In fact, the Interim Order only sets forth the procedure to obtain a DNA sample *after* DCJS puts the banner heading on a rap sheet. As the Interim Order itself does not comprise evidence of a custom or policy of wrongfully identifying individuals as being

---

[7] NYPD Interim Order No. 45 states that "Prisoners who must submit a DNA sample will be identified on their Rap Sheet with a banner which reads "Required to Provide A DNA Sample for Inclusion in the State DNA Database." The Interim Order instructs each Borough Court Section Rap/Warrant Officer to:

> (1) Review all prisoner Rap Sheets and identify Rap Sheets with the banner heading "REQUIRED TO PROVIDE A DNA SAMPLE FOR INCLUSION IN THE STATE DNA DATABANK."
> (2) Stamp or write on the front page of the Rap Sheet "DNA SAMPLE REQUIRED" and notify assigned supervisor.
> (3) Have entry made in the DNA Sample Log, completing all appropriate captions.

Ex. D. Then, the Borough Court Section Supervisor must:

> (4) Certify to [sic] accuracy and completeness of entries in the DNA Sample log.
> (5) Utilize the OLPA (On-Line Prisoner Arraignment) system to obtain the lodging location of the defendant.
> (6) Have a OLPA notepad entry made noting the requirement of a DNA sample.
> (7) Notify intake supervisor to assign a police officer to obtain a DNA sample.

Id. The Intake Supervisor then assigns a police officer to obtain the DNA sample and the assigned officer uses the DNA Specimen Collection Kit to procure the sample.

required to submit a DNA sample or of unlawfully obtaining DNA samples, it fails to "demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury." Roe, 542 F.3d at 36-7.[8] As plaintiff provides no evidence that an officially adopted custom, policy, or practice caused a violation of his rights, the City of New York's motion for summary judgment should be granted.

V.     Judgment Independent of the Motion

Plaintiff's amended complaint asserts that defendants' actions violated his rights under the "5th, 8th, 9th, 10th, and 14th Amendments." Am. Compl. at p. 3, II(D).[9] Defendants do not address plaintiff's claims based on these Amendments. However, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, the Court may "after giving notice and reasonable time to respond ... grant the motion on grounds not raised by a party." Fed. R. Civ. P. 56(f). I respectfully recommend that plaintiff be granted 30 days to submit evidence opposing the following grounds for dismissing his claims brought under the Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments to the Constitution.

First, the Ninth and Tenth Amendments are inapplicable because they preserve unenumerated rights or protect state rights from federal infringement. U.S. Const. amends. IX, X. Plaintiff asserts no facts that suggest a violation of these rights. The buccal swab that defendants obtained herein did not violate plaintiff's rights under the Eighth Amendment's

---

[8] Miller's actions in and of themselves do not establish a custom, policy or practice. Raphael, 387 F. Supp. 2d at 131. To the extent there was no marker on plaintiff's rap sheet indicating the requirement of a DNA sample, plaintiff may be alleging that Miller acted without authority or contrary to the Interim Order. However, in that situation, the City would still not be liable for Miller's actions. Id. ("Liability for unauthorized acts is personal; to hold the municipality liable, [Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978)] tells us, the agent's actions must implement rather than frustrate the government's policy."). The Court notes that even absent a banner heading on plaintiff's rap sheet indicating that he was required to submit a DNA sample, Miller would still be entitled to qualified immunity for relying on the qualifying designated offense listed on plaintiff's rap sheet. See *infra* at 18.

[9] Plaintiff's amended complaint does not include any state law claims. If plaintiff had pled state law claims, these claims would be barred due to plaintiff's undisputed failure to comply with N.Y. Gen. Mun. Law §§ 50-e and 50-i. See Pl.'s 56.1 Statement ¶ 31; Dingle v. City of New York, 728 F. Supp. 2d 332, 348-349 (S.D.N.Y. 2010).

prohibition on cruel and unusual punishment. As the Supreme Court has held that blood tests "would not be considered offensive even by the most delicate," a buccal "swab ... cannot be deemed cruel and unusual punishment" Yusov v. Martinez, No. 00-CV-5577, 2000 WL 1593387, at * 5 (S.D.N.Y. Oct. 24, 2000) (Buchwald, J.) (quoting Briethaupt v. Abram, 352 U.S. 432, 436 (1957)). Additionally, any claims under the Fifth and Fourteenth Amendments must fail because: (1) plaintiff does not allege he was discriminated against *vis a vis* similarly situated individuals for a Fourteenth Amendment equal protection claim; (2) the legislative process provided plaintiff with the requisite procedural due process, Yusov, 2000 WL 1593387, at * 4; (3) buccal swabbing does not implicate plaintiff's substantive due process rights because it was performed in a "medically acceptable manner," id. at * 5, and relying on the criminal history section of plaintiff's rap sheet was not so "outrageously arbitrary as to constitute a gross abuse of governmental authority," Natale v. Town of Ridgfield, 170 F.3d 258, 262 (2d Cir. 1999), see *infra* at 9-11; and (4) a DNA sample is not "testimonial or communicative in nature" to implicate a right to counsel, Yusov, 2000 WL 1593387, at * 5.

Plaintiff is advised that under Rule 56, he must submit sufficient evidence to oppose the proposed summary judgment on these grounds. Fed. R. Civ. P. 56(c).[10]

VI. PLAINTIFF'S REQUEST FOR ADDITIONAL DISCOVERY

In his opposition to the instant motion, plaintiff submits an affidavit for additional discovery pursuant to Rule 56(d) (formerly Rule 56(f)). Plaintiff's "Affidavit a Motion for Additional Time for Discovery Pursuant to Fed. Rule Civil Pro. 56(f)," Pl.'s Opp.'n, Ex. E. ("Pl.'s Rule 56(d) Aff.") Pursuant to Rule 56(d), "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its position, the

---

[10] The Court attaches a copy of the Local Rule 56.2 notice to this Report for plaintiff's benefit. This notice reads "defendant ... has moved;" however, as discussed *supra*, the Court recommends that summary judgment should be considered independent of defendants' motion, on the grounds that plaintiff cannot establish that the defendants violated his constitutional rights under the Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments.

16

court may" allow the nonmovant time to take further discovery. Fed. R. Civ. P. 56(d). In order "[t]o request discovery under [Rule 56(d)], a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." Gualandi v. Adams, 385 F.3d 236, 244 (2d Cir. 2004). Moreover, "a party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed time for discovery absent a strong showing of need." Burlington Coat Factory Warehouse, Corp. v. Esprit De Corp., 769 F.2d 919, 928 (2d Cir. 1985).

Plaintiff requests the following additional discovery: (1) "the existence and location of any identifiable proceeds from third parties or the names of other who may become a defendant;" (2) the names of the rap/warrant officer, section supervisor, intake supervisor, and the individual "who stamp[ed] or wrote on rap sheet;" (3) the OLPA notepad copy; (4) DNA instructions from Collection Kit; and (5) a copy of "Log Book for DNA Sample [which] will show that my DNA was tak[en] on one of the days I ask for." Pl.'s Rule 56(d) Aff. at 2,4. He asserts that he may move to amend his complaint "to assert additional grounds and add more defendants and states that defendants "still have to identify" John Doe 2. Id. at 2. Plaintiff also alleges that the materials sought are the object of outstanding discovery requests and that everything he asks for is permissible under Rule 34. Id. at 2, 5.

Defendants have not responded to plaintiff's Rule 56(d) request. Nonetheless, plaintiff's request should be denied as plaintiff fails to set forth how these facts are reasonably expected to raise a genuine issue of material fact. The existence of other parties or defendants, names of the rap/warrant officer, section supervisor, intake supervisor, and the individual "who stamp[ed] or wrote on rap sheet;" DNA instructions from Collection Kit; and copy of "Log Book for DNA

17

Sample" will not raise a triable issue of fact regarding plaintiff's challenge to the constitutionality of the DNA sample that was taken from plaintiff. There is no dispute regarding the date that the sample was taken from plaintiff and although the officer who directed plaintiff to give the sample has not been identified, that officer would be entitled to qualified immunity for the same reasons as Officer Miller.

Similarly, whether or not a "OLPA notepad entry" exists will not create a genuine issue of material fact. A "OLPA notepad entry" is described in a Interim Order. Pursuant to that order, the Borough Court Supervisor, relying on the banner heading on a rap sheet, uses the "OLPA" (On-Line Prisoner Arraignment) system to "obtain the lodging location of the defendant" and then make a "OLPA entry ... noting the requirement of a DNA sample," after which he or she notifies an intake supervisor to assign a police officer to obtain the DNA sample. Pl.'s Opp.'n, Ex. D. While an OLPA entry would confirm the reasonableness of Miller's decision to take the DNA sample, the absence of a "OLPA notepad entry," would not create a genuine issue of material fact regarding the reasonableness of Miller's reliance on the rap sheet. First, there is no indication or argument that Miller had access, contemporaneous or otherwise, to the OLPA computer system. Second, even assuming he did, faced with conflicting information, Miller could have reasonably relied on plaintiff's criminal history listed on the rap sheet, despite the absence of a "OLPA notepad entry." Cf Caceres, 631 F.3d at 623 (finding that although plaintiff's skin color and race were inconsistent with information on the warrant, an officer "might reasonably assume that [the characteristics] were entered incorrectly – particularly since the" remaining physical characteristics were "either accurate or within bounds"). While the Court would be wary to countenance officers procuring DNA samples without any evidence or overlooking clearly contradictory evidence, even assuming the lack of an OLPA computer entry noting the requirement of a DNA sample in this case, the record does not establish facts from

18

which a jury could conclude that Miller's reliance on the rap sheet was unreasonable or in violation of a clearly established right. Moore, 371 F.3d at 117.

Moreover, plaintiff did not seek additional discovery or more time until after the summary judgment motion was filed and he fails to establish the requisite "strong showing of need." Burlington Coat Factory Warehouse, Corp., 769 F.2d at 928. Therefore, plaintiff's request for additional discovery under Rule 56(d) should be denied.

## CONCLUSION

I respectfully recommend that defendants' motion for summary judgment should be granted for the reasons stated above. I also respectfully recommend that plaintiff should be granted 30 days to present evidence to oppose the granting of summary judgment, independent of defendants' motion on plaintiff's remaining claims, as set forth *supra* at 15-16.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital District Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

/Signed by Judge Lois Bloom/

LOIS BLOOM
United States Magistrate Judge

Dated: July 25, 2011
Brooklyn, New York